UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RODOLFO VASQUEZ-GARCIA,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, Warden, Northwest ICE Processing Center,<br><br>Respondents. | CASE NO. 2:26-cv-03226-TL<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Rodolfo Vasquez-Garcia's Petition for Writ of Habeas Corpus ("habeas petition" or "petition"). Dkt. No. 4. Having considered the petition, the Government's return (Dkt. No. 9), and Petitioner's traverse (Dkt. No. 13), the Court GRANTS the habeas petition and ORDERS Petitioner's release.

## I. BACKGROUND

Petitioner, proceeding pro se, is a noncitizen detained at the Northwest ICE Processing Center ("NWIPC") who challenges the legality of his detention and seeks a writ of habeas

corpus. *See generally* Dkt. No. 4. Petitioner is a native and citizen of Mexico. Dkt. No. 11 (Administrative Record) at 11–12. According to DHS records, Petitioner was twice granted voluntary removal to Mexico—first on December 23, 2011, and then on November 29, 2012. *Id.* On an unknown date later, Petitioner re-entered the United States without being admitted or paroled. *Id.* On December 24, 2023, Petitioner was charged with driving under the influence. *Id.* at 12, 103–05. On March 26, 2025, Petitioner was arrested for driving with a suspended license and an ignition interlock device violation. *Id.* at 12, 108. The disposition of these charges are still pending according to DHS records, *id.* at 12, and the record appears to show that Petitioner entered into a pre-trial diversion agreement on the driving under the influence charge. *Id.* at 109–118.

On May 28, 2025, Petitioner encountered Immigration and Customs Enforcement ("ICE") agents in Centralia, Washington. *Id.* at 12. On the belief that Petitioner was present in the country without authorization, ICE arrested and transported him to NWIPC, where he is still detained. *Id.* at 12–13; Dkt. No. 4 at 2. On October 14, 2025, an Immigration Judge ("IJ") found Petitioner removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and ordered him removed to Mexico. Dkt. No. 11 at 18–21. This removal order is not final, however. *See id.*

Petitioner has previously sought a writ of habeas corpus on the ground that he was incorrectly classified as subject to mandatory detention under 8 U.S.C. § 1225(b) and denied the opportunity to seek release on bond. *Vazquez Garcia v. Scott*, No. C26-1430, 2026 WL 1723674, at *1 (W.D. Wash. Aug. 21, 2026). On June 15, 2026, the Honorable Tiffany M. Cartwright, United States District Judge, granted Petitioner's first petition and ordered the government to either release him or provide him with a bond hearing pursuant to 8 U.S.C. § 1226(a). *Id.* at *3. Petitioner attended this bond hearing on July 9, 2026. Dkt. No. 4 at 4–5; Dkt. No. 11 at 119. In

the hearing, IJ Joshua Rosen denied conditional release, determining Petitioner was both a flight risk and a danger to the community. Dkt. No. 11 at 119–20. Respondents have provided the Court with an audio recording of this hearing. Dkt. No. 12 (Notice of Filing Paper or Physical Materials with the Clerk).

On September 9, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, arguing that his bond hearing was deficient because the IJ "determined that I was [a] flight risk without [any] reasoning" and abused thereby his discretion. Dkt. No. 4 at 33–36.[1]

## II. Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Administrative Exhaustion

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining whether prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to

[1] Petitioner also filed a Motion to Submit Supplemental Declaration, in support of his Petition. *See* Dkt. No. 8. Respondents have not objected to this motion. *See* Dkt. No. 9. Accordingly, the Court grants this order.

> generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner establishes one of the following *Laing* factors apply: (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Petitioner argues that he exhausted all administrative remedies (Dkt. No. 4 at 19), or alternatively that this Court "should waive any exhaustion requirement . . . because exhaustion would be futile" (*id.* at 23). Respondents argue that Petitioner has not exhausted his administrative remedies related to the bond denial but provide no argument that exhaustion should not be waived under *Liang*. *See* Dkt. No. 9 at 5–6.

The record before the Court shows Petitioner has not exhausted his administrative remedies. Although Petitioner appealed a previous bond decision that held he was statutorily ineligible for bond (*see* Dkt. No. 9 at 6), the Court does not have any record that Petitioner appealed the July 9, 2026, bond hearing which prompts his instant Petition.

But even so, the Court agrees with Petitioner's alternative argument that the prudential exhaustion requirement should be waived. The third *Laing* factor—"irreparable injury"—points towards a waiver. 370 F.3d at 1000. Petitioner asserts that "irreparable injury would result" from

requiring him to exhaust his administrative remedies, as awaiting a decision throughout the "average processing time . . . for [a] BIA Bond Appeal" creates "the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process." Dkt. No. 13 at 8. Here, Petitioner has been detained for more than 18 months. *Id.* at 2. Besides the immediate and obvious harm to him of being detained, Petitioner provides documentation that his dependents are suffering irreparable harm because of his detention. *See* Dkt. No. 11 at 50 (Letter from therapist Kelly Samson stating "[a]s a result of her father leaving unexpectedly, [Petitioner's older daughter] has started experiencing night terrors and wakes up in the night crying and unable to talk."), 52 (same with Petitioner's younger daughter), 51 (letter from therapist Shanna Schultz stating Petitioner's son "cries daily" and his father's detention is "causing him to be more irritable and angrier and fighting with his siblings which did not occur previously according to his mother"). Courts in this District have found irreparable harm in analogous situations. *See, e.g.*, *Shirley v. Scott*, No. C26-2980, 2026 WL 2833676, at *3 (W.D. Wash. Sept. 22, 2026) ("[E]ven if petitioner's administrative appeal is ultimately successful, she will have suffered irreparable injury during the long wait."); *De La Torre Ferretriz v. Hernandez*, No. C26-2235, 2026 WL 2123037, at *3 (W.D. Wash. July 23, 2026) ("[W]aiting for the BIA's resolution of [petitioner's] appeal would risk an indefinite extension of his detention."); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) ("Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim. . . . Petitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention."). The Court agrees and finds it appropriate under the third *Laing* factor to waive administrative exhaustion. Therefore, the Court now turns to the merits of Petitioner's challenge to the IJ's bond denial decision.

**B. Adequacy of Petitioner's Bond Hearing**

**1. The *Guerra* Factors and Abuse of Discretion**

"To determine whether a [noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). These so-called "*Guerra* factors" include:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40.

The Court reviews the IJ's bond determination for abuse of discretion. *Martinez*, 124 F.4th at 784. Under an abuse-of-discretion standard, the Court "cannot reweigh evidence but can only determine whether the immigration court applied the correct legal standard." *Id.* at 785 (citation modified). "When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Second, it may be clear from the adjudicator's opinion

itself that [they] simply did not apply the correct standard to the facts." *Id.* (quoting *Hechavarria*, 358 F. Supp. 3d at 240). "Although an immigration judge need not discuss each piece of evidence submitted, 'where there is any indication that the [immigration court] did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand.'" *Sanchez Henao v. Hernandez*, No. C26-0707, 2026 WL 1492714, at *5 (W.D. Wash. May 28, 2026) (quoting *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011)).

**2. Petitioner's Hearing and the IJ's Decision**

At the July 9, 2026, bond hearing, the IJ denied bond on the basis that Petitioner posed a flight risk and/or a danger to the community.[2] *See* Dkt. No. 11 at 119–20. The Petitioner claims that IJ did "not explain[] how he arrived at that conclusion" and that his finding "does not rationally apply the governing legal standard and the facts and evidence here." Dkt. No. 13 at 11.

The IJ's written order provides no insight into the reasons for his finding. It is a form that says:

> [X] ORDERED THAT the request for a change in custody be denied.
> Bond to remain at $_______ OR REMAINS AT NO BOND based on the following:
> [X] Danger/Flight Risk

Dkt. No. 11 at 119. Respondents note that this order and the recording of the hearing "provide[s] no explanation of his reasoning and no discussion of the evidence Petitioner presented." Dkt. No. 9 at 4. Additionally, it does not appear that the IJ created any written bond memorandum. Respondents only contend that Petitioner is asking this Court to impermissibly "reweigh" the evidence, which is not an "argument that the immigration judge applied the wrong legal standard." Dkt. No. 9 at 7.

---

[2] The Parties disagree over whether it was the Petitioner's burden to establish by a preponderance of evidence that he was not a flight risk or a danger to the community as Respondent's claim, *see* Dkt. No. 9 at 7; or whether the Government had the burden of proving the inverse by clearing and convincing evidence, as Petitioner claims. Dkt. No. 13 at 3. However, as either evidentiary standard still results in the same outcome, the Court need not determine which standard applies here.

The Court is perplexed by Respondent's assertion. The record shows that the petition does raise a claim that the immigration judge applied the wrong legal standard. In the first sentence of the section titled "The Immigration Judge Abused his Discretion by Denying Bond," the Petitioner contends the IJ "made no mention at the hearing of the Guerra factors and gave no reasons for his decision to deny Bond." Dkt. No. 4 at 33. Unambiguously, this is an argument that (1) the IJ was supposed to apply a legal standard, and (2) the IJ failed to do so. In other words, this is an "argument that the immigration judge applied the wrong legal standard." Dkt. No. 9 at 7. Therefore, the Court reviews whether the IJ utilized the *Guerra* factors in issuing his bond denial.

The recording of the hearing indicates the IJ did not apply the *Guerra* factors to Petitioner's case. In denying Petitioner conditional release, the IJ's oral determination in full was as follows:

> The court sympathizes with your family situation, and has reviewed your prior immigration history. That includes voluntary return to Mexico in 2011, almost a year later another voluntary return to Mexico, and then the current removal order after the immigration court considered your I-589 application. The court has considered the low likelihood of relief on appeal, and the court has considered the manner of entry as well in this case. While there is a lot of positive equities by the respondent, the court doesn't find the evidence sufficient to grant bond or bail as laid out by the law of this case. The court has considered respondent's financial means to provide, and the court is denying based on a failure to overcome evidence of flight risk and danger to community.

Bond Hearing Audio at 45:30–49:01. This oral determination is the only record of why the IJ denied bond.

At best, the oral determination states it considered the "manner of entry[,]"and the IJ also mentions two decade-old voluntary removal orders, which could be construed as considering a "history of immigration violations." Bond Hearing Audio at 47:55–48:00, 46:45–47:00. The

other evidence presented to the IJ—that Petitioner has a fixed address with his spouse and children (*see* Dkt. No. 11 at 75), has been employed as a roofer in Washington for more than a decade (*see id.* at 35), has three children who are United States citizens (*id.* at 61–63), and has no record of flight—all point toward a finding that Petitioner is not a flight risk. The IJ seemed to recognize that in acknowledging "there [are] a lot of positive equities by the respondent." Additionally the IJ's brief reasoning included at least one consideration—the "low likelihood of relief on appeal"—which is not clearly linked to any *Guerra* factor, without explaining how or whether this is probative of flight risk, dangerousness, or both. In sum, the IJ only pointed to two factors pointing toward a finding of flight risk, and those two factors alone would always dictate detention and gut the *Guerra* inquiry for any noncitizen who entered the United States without inspection.

As for dangerousness, neither manner of entry nor a history of immigration violations has a clear relationship to this factor. The IJ's oral ruling does not appear to be related in any way to his finding, evidenced by the written bond order, that Petitioner poses a danger.

The IJ was required to provide his legal reasoning when he denied bond. *See* 8 C.F.R. § 1003.19(f) ("The determination of an Immigration Judge with respect to custody status or bond redetermination shall be entered on the appropriate form at the time such decision is made and the parties shall be informed orally or in writing of the reasons for the decision."). While the oral ruling here was brief—Respondents themselves assert that the IJ "provided no explanation of his reasoning and no discussion of the evidence Petitioner presented" (Dkt. No. 9 at 4)—the IJ did give reasons for his findings, and the Court presumes that the reasons the IJ gave are the reasons on which he relied. In sum, the IJ based both his dangerousness and flight-risk determination on two of the least probative *Guerra* factors while acknowledging but then seemingly ignoring at least four factors that clearly weigh in favor of a finding that Petitioner is not a flight risk,

addressing nothing related to dangerousness, and including considerations found nowhere in the *Guerra* test whose relationship to flight risk or dangerousness were not explained. As such, the Court cannot find that the IJ made his bond denial decision in accordance with the correct legal standard. *See Tavurov*, 2026 WL 1283513, at *6. As a result, the Court finds that the IJ abused his discretion in denying Petitioner any form of conditional release based on the incorrect legal standard.

### C. Appropriate Remedy

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Soriano*, 830 F. Supp. 3d at 1081. Here, Petitioner was denied due process of law and kept in detention based on a legally erroneous dangerousness and flight-risk finding. In line with other courts in this District, and given the present circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Id.*; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *8–9 (W.D. Wash. May 7, 2026) (same); *Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same). Therefore, the Court orders Petitioner's immediate release.

//

//

//

//

//

## IV. CONCLUSION

Accordingly, Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. No. 4) is GRANTED. Additionally, Petitioner's Motion to Submit Supplemental Declaration (Dkt. No. 8) is GRANTED. It is further ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting ontheir behalf or in concert with them:

(a) Shall release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) Shall submit to the Court, **within forty-eight (48) hours** of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

Dated this 10th day of November, 2026.

Tana Lin
United States District Judge